Sᴍɪᴛʜ, Jᴏʜɴsᴏɴ, and Aʟᴇxᴀɴᴅᴇʀ, JJ., concur with Sᴀɴᴅᴇʀs, J.

[No. 68297-6.   En Banc.]
Argued January 27, 2000.   Decided October 19, 2000.

Dᴀᴠɪᴅ Wɪʟsᴏɴ, *Respondent*, v. Tʜᴇ Sᴛᴀᴛᴇ ᴏf Wᴀsʜɪɴɢᴛᴏɴ, ᴇᴛ ᴀʟ., *Petitioners*.

*Christine O. Gregoire, Attorney General,* and *Andrew F. Scott* and *Bruce L. Turcott, Assistants,* for petitioners.

*Roblin J. Williamson* and *Kathryn A. Williams,* for respondent.

GUY, C.J. — This case is an appeal from a partial summary judgment and is before this court on transfer from Division One of the Court of Appeals. The original case was a class action brought by David Wilson, through his guardian ad litem, as class representative for a proposed class of persons who had third party liability injury claims and received medical assistance from the Department of Social and Health Services (DSHS) for injury related medical expenses. This class of people has been compelled by state law to pay a portion of their settlements or judgments to the state as reimbursement for medical assistance.

We are asked to decide whether the state law, which attempts to lien a Medicaid recipient's third party recovery beyond that portion specifically allocated to medical expenses, conflicts with the federal law and is thus preempted. We hold the state statute does not conflict with the federal law because the federal statutory scheme allows for the state to be reimbursed from the third party recovery for all medical expenses paid by the state.

## FACTS

Respondent David Wilson was born prematurely and suffered complications as a result. At the time he was born, his mother was a welfare recipient and therefore eligible to receive Medicaid. Wilson developed staphylococcal aureus meningitis, allegedly caused by the care he received at the hospital. Several brain surgeries were performed on Wilson but, due to the illness, he is permanently and severely disabled. Clerk's Papers at 54-55. The total amount the state provided for Wilson's medical expenses was $184,555. Clerk's Papers at 55, 145.

Two years later, in 1994, Wilson's attorney guardian ad litem brought a medical negligence suit against the hospital

and physicians who had treated Wilson during his initial hospitalization. Before settlement, DSHS filed a statutory lien and asserted a claim in the amount of $184,555 against any recovery made on behalf of Wilson. Wilson recovered a settlement totaling $750,000. DSHS deducted its pro rata share of attorney fees and costs and asserted a right of reimbursement for $108,303. Clerk's Papers at 57. Wilson reimbursed DSHS the $108,303 under protest and filed the lawsuit that is the subject now before this court.

Wilson's complaint against DSHS alleged that federal Medicaid law prohibits the imposition of any lien whatsoever against his third party recovery. Wilson argued federal law prohibits states from seeking reimbursement from settlements or judgments obtained by Medicaid recipients on their own effort; states must pursue third parties directly. Wilson also alleged that in pursuing its rights of subrogation, assignment, and lien for reimbursement of Medicaid assistance, DSHS committed the torts of fraud and negligent misrepresentation and also violated Wilson's due process rights by not providing Wilson a hearing prior to asserting the reimbursement claim. Clerk's Papers at 7-15.

After stipulating there were no issues of material fact and only issues of law, both parties moved for summary judgment. The order granting partial summary judgment stated that RCW 74.09.185 acts as an assignment as a matter of law by declaring that the state is considered to have acquired rights to payment by any other party for health care items or services. The court stated that this assignment is not of the total right to recover, but only the right to recover from the portion of the settlement specifically allocated to medical expenses. The court reasoned that the federal statute allows for assignment; therefore, the Washington assignment law is consistent with the federal law. The order stated that Washington law is inconsistent where the law attempts to put a lien on property that is not recovery for medical payments. The court concluded that the Washington law, which attempts to lien property that is

not a recovery of medical payments, is in conflict with federal law and is thus preempted. Clerk's Papers at 405-06.

DSHS submitted a motion for discretionary review of the trial court decision to Division One of the Court of Appeals. After the Court of Appeals granted review, Wilson argued the case be transferred to this court. We granted review and now decide the issue presented in this case.

## ISSUE

Whether federal law prohibits the imposition of a state statutory recovery lien against the proceeds of a Medicaid recipient's third party recovery beyond that portion of the recovery allocated specifically to medical expenses.

## DISCUSSION

■ Medicaid is a publicly funded medical assistance program for poor and disabled persons. The state and federal government jointly fund this program. Medicaid is available in two different circumstances. The first is to aid individuals who do not have the resources to obtain insurance or otherwise pay their medical bills. The other is as a resource for the elderly and disabled who need institutional care but have insufficient funds to finance it. Medicaid is to be the payment source of last resort; all other available resources must be used before Medicaid funds are made available to eligible recipients. S. REP. No. 146, 99th Cong., 1st Sess. 459 (1985), *reprinted in* 1986 U.S.C.C.A.N. 42. In order for the system to function it must be replenished so as to provide a source of support for subsequent Medicaid recipients.

■ The initial determination is whether the state acquired the right to reimbursement for the funds it paid out. A valid assignment of recovery for medical expenses paid occurred as a matter of law. Under the federal scheme the agency must require individuals to assign to the state third

party payments for medical care. 42 C.F.R. § 433.146 (1998) (addressing assignment of rights to benefits under medical assistance programs). Moreover, assignment of this right is required for the recipient to be eligible to receive assistance. 42 U.S.C. § 1396k (1994). States are required to enact laws under which "the State is considered to have acquired the rights of such individual [medical assistance recipient] to payment by any other party for such health care items or services[.]" 42 U.S.C. § 1396a(a)(25)(H) (Supp. 1998). RCW 74.09.180, 74.09.185, and RCW 43.20B.060 fulfill this requirement. The first statute provides: "[T]he department shall thereby be subrogated to the recipient's rights against the recovery had from any tort feasor or the tort feasor's insurer, or both, and shall have a lien thereupon to the extent of the value of the assistance furnished by the department." RCW 74.09.180(i). RCW 74.09.185 outlines the rights "to payment by any other party for those health care items or services" the state is considered to have acquired. RCW 43.20B.060(2) states that to secure this reimbursement "[t]he department shall have a lien upon any recovery by or on behalf of the recipient from such tort feasor or the tort feasor's insurer, or both to the extent of the value of the assistance paid[.]"

A statutory assignment is allowed in this setting. The federal regulation states "[i]f assignment of rights to benefits is automatic because of State law, the agency may substitute such an assignment for an individual executed assignment, as long as the agency informs the individual of the terms and consequences of the State law." 42 C.F.R. § 433.146(c) (1998). Thus the federal law permits a statutory assignment in this setting.[1] Because RCW 74.09.180,

---

[1] The current public assistance benefits form states: "By asking for and receiving medical care benefits, I (we) assign to the State of Washington my (our) rights to medical care support and any third party payments for medical care to pay for covered medical services while receiving medical care benefits." Clerk's Papers at 336. This acts as an express assignment made by the recipient specifically assigning the right to third party payments for medical care support paid by the state. At the time Wilson's mother applied for assistance, the "pre-1992" version of the application form did not contain this assignment language assigning the specific rights to third party payment. The form stated:

74.09.185, and RCW 43.20B.060 act as a statutory assignment, Wilson's rights to payment from third parties to the state were expenses assigned when benefits were applied for and received.

■■ The issue remains whether the lien is against the entire amount of the settlement or if it is only against that portion of the settlement allocated to medical expenses. The trial court concluded that the state law is preempted to the extent it attempts to lien property that is not a recovery of Medicaid because it allows the state to lien what the trial court viewed as the Medicaid recipient's property. This court has stated that "[f]ederal law preempts state law when Congress intends to occupy a given field, when state law directly conflicts with federal law, or when state law would hinder accomplishment of the full purposes and objectives of the federal law." *Berger v. Personal Prods. Inc.*, 115 Wn.2d 267, 270, 797 P.2d 1148 (1990), *cert. denied*, 499 U.S. 961, 111 S. Ct. 1584, 113 L. Ed. 2d 649 (1991) (citing *Alverado v. Wash. Pub. Power Supply Sys.*, 111 Wn.2d 424, 431, 759 P.2d 427 (1988), *cert. denied*, 490 U.S. 1004, 109 S. Ct. 1637, 104 L. Ed. 2d 153 (1989)). There is a presumption against preemption unless the state law frustrates the clear and manifest purpose of the federal law. *Goodwin v. Bacon*, 127 Wn.2d 50, 57, 896 P.2d 673 (1995).

■ The federal law does not preempt the state law here because there is no conflict that causes major damage to a clear federal interest. 42 U.S.C. § 1396a(a)(25)(H) (Supp. 1998) expressly instructs the state to have in effect laws under which "the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services[.]" Coupled with this express delegation of authority, the federal statute directs

"By asking for and receiving financial or medical care benefits, I assign to the State of Washington all rights to any support, including child support or medical care support." Clerk's Papers at 337. Wilson's rights to third party payments for medical care were statutorily assigned, however, when Wilson's mother applied for and received public assistance; therefore, it was not necessary for her to sign a form constituting an express assignment of those rights in order for those rights to be assigned. Moreover, Wilson's mother was on notice that, by applying for and receiving state assistance, rights to medical care support were assigned.

states to recover the amount paid out in assistance "to the extent that payment has been made . . . for health care items or services . . . ." 42 U.S.C. § 1396a(a)(25)(H) (Supp. 1998). By the state having in place statutes under which it has the right to recover "to the extent of the value of the assistance paid," the state law advances the purposes and objectives of the federal law. RCW 43.20B.060(2).

Wilson argues that the state law is preempted because the federal law does not permit the department to place liens on recipients' property in certain contexts.[2] In the current situation, the Medicaid recipient assigned the right to payment to the extent paid out by the state. *See* RCW 74.09.180, 74.09.185, and RCW 43.20B.060. As such, the department steps in and puts a lien on the recovery before it becomes the property of the Medicaid recipient. Because the department does not have a lien on "property" of the recipient, the state statute permitting this lien is not in conflict with the federal statute.

The federal statute permits states to enact legislation providing for reimbursement to the department of funds

---

[2] The State argues that 42 U.S.C. § 1396p (1994), which prohibits liens on the property of a recipient to secure reimbursement, applies only in the estate recovery context. But due to the lien being placed on the settlement prior to it becoming the property of the Medicaid recipient, the prohibition outlined in section 1396p is irrelevant. The text of section 1396p addresses situations in which the individual is 55 years of age or older who received assistance consisting of "nursing facility services, home and community-based services, and related hospital and prescription drug services . . . ." 42 U.S.C. § 1396p(b)(1)(B)(i) (1994). This section also addresses transfers of assets and treatment of trust amounts. 42 U.S.C. § 1396p(c), (d) (1994). Additionally, the legislative history of this section indicates it applies only in the estate recovery context. The house report accompanying the 1993 amendments made to this statutory scheme refer to the language in section 1396p as relating to "Medicaid estate recoveries." H.R. REP. No. 103-11, §§ 5116, 5112, 103d Cong., 1st Sess. (1993), *reprinted in* 1993 U.S.C.C.A.N. 378, 535-36. On its face and considering the legislative history, section 1396p appears to address only the recovery in the estate context; however, 42 U.S.C. § 1396a(18) (1994) states that a state plan must "comply with the provisions of section 1396p of this title with respect to liens, adjustments and recoveries of medical assistance correctly paid, transfers of assets, and treatment of certain trusts[.]" This creates some ambiguity as to whether section 1396p applies exclusively to the estate recovery context because it references liens in general and medical assistance correctly paid. However, this issue need not be addressed since the state statute is not in conflict with this federal lien provision. The recovery being liened is not the property of the recipient and therefore does not conflict with the lien prohibition in the federal statute.

paid out by the state. Reimbursement is not limited to the portion of the settlement specifically allocated to recovery for medical expenses. The federal statute states:

> *that to the extent that payment has been made* under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, the State has in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have *acquired the rights of such individual to payment by any other party for such health care items or services*[.]

42 U.S.C. § 1396a(a)(25)(H) (Supp. 1998) (emphasis added). Therefore, the state is not limited to recovery from only that portion of the settlement specifically allocated to medical expenses. The federal statute states recovery is to the extent of payment made by the state for health care items or services.

The trial judge found ambiguity between RCW 74.09.180 and 74.09.185. However, when these sections are read as a whole and in light of the federal statute, there is no ambiguity. Section .180 states "the department shall thereby be subrogated to the recipient's rights against the recovery had from any tort feasor or the tort feasor's insurer, or both, and shall have a lien thereupon *to the extent of the value* of the assistance furnished by the department." (Emphasis added.) Section .185 states:

> To the extent that payment for covered expenses has been made under medical assistance for health care items or services furnished to an individual, in any case where a third party has a legal liability to make payments, the state is considered to have acquired the rights of the individual to payment by any other party *for those health care items or services.*

(Emphasis added.) The trial judge implied section .185 may be subject to two interpretations: "for those health care items or services" may be interpreted as a description of the type of payment from a third party, or as a description of the

amount the department may recover. When these two sections are read as a whole and in light of the federal statute allowing for recovery to the extent of assistance provided, the department is to recover the amount of assistance provided. The reimbursement is not limited to the recovery allocated specifically to medical expenses.

Wilson asserted that the state should actively pursue claims against liable third parties. However, the assignment is for the right of payment from the third party, not solely the right to pursue a cause of action against the third party.[3] The state is not required to pursue a cause of action against the third party. Although the federal scheme allows a state to pursue third parties, the option to pursue such parties is merely one of the state's rights. *See* 42 U.S.C. § 1396k(a)(1)(C) (1994) (individual is required to assist the state in pursuing liable third parties); 42 U.S.C. § 1396a(a)(25)(A) (Supp. 1998) ("the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties"). The federal scheme also identifies that the state has rights to payment by other parties for health care items or services. 42 U.S.C. § 1396a(a)(25)(H) (Supp. 1998). Under federal law the state has the right to either pursue third parties directly or collect from third party recovery. Consistent with federal law, the state statute takes into consideration those circumstances in which the state does not pursue a claim, but merely steps in after recovery is made. *See* RCW 74.09.180, 74.09.185, and RCW 43.20B.060. Moreover, if the department recovers through an action brought by the recipient, the recovery is reduced by the pro rata share of attorney fees and costs. RCW 43.20B.060(4). Both the federal and state laws take into account those situations in

---

[3] The same issue was addressed in a New York Court of Appeals decision. Because the federal law requires cooperation from the state in recovering funds paid out, the state must require assignment of the right to see reimbursement from the third party. The court stated: "As an alternative to suing the responsible third party directly, the Department may pursue reimbursement indirectly by placing a lien on personal injury suits brought by a Medicaid recipient against the responsible party." *Calvanese v. Calvanese*, 93 N.Y.2d 111, 117, 710 N.E.2d 1079, 1081, 688 N.Y.S.2d 479, *cert. denied*, 528 U.S. 928 (1999).

which the state does not pursue its own claim.

The conclusion that a lien may be imposed on the entire settlement is consistent with decisions from courts faced with similar issues. The Utah Supreme Court decided that the state is not prohibited from asserting a lien on a Medicaid recipient's recovery from a third party. *Wallace v. Estate of Jackson*, 972 P.2d 446 (Utah 1998), *cert. denied*, 528 U.S. 810, 120 S. Ct. 42, 145 L. Ed. 2d 38 (1999). The court reasoned that payments made by a third party do not legally become the property of the recipient until after settlement " 'because third party settlement proceeds have been specified by the recipient as belonging to the State Medicaid Agency as a precondition of the recipient's eligibility.' " *Id.* at 448 (quoting State's brief).

The issue of whether the entire settlement is subject to the state's lien was addressed on remand in a New York case. *See Link v. Town of Smithtown*, 175 Misc. 2d 238, 670 N.Y.S.2d 692 (1997). The plaintiff in *Link* argued that the state's reimbursement claim was limited to the portion of the settlement earmarked as medical expenses while the portion allocated to pain and suffering could not be included in the reimbursement. *Id.* at 694.The court considered both the state and federal statutes and concluded that all the settlement proceeds were available to satisfy the amount of reimbursement. *Id.* Another New York court stated the following in finding that the state may recover from the settlement the entire amount paid out:

> Appellants argue that only the settlement proceeds specifically allocated to past medical expenses should be available to satisfy the Medicaid lien. Nowhere in the elaborate statutory scheme governing this area of the law, however, is the agency's right of recovery restricted in this manner. A State that has furnished Medicaid acquires the rights of recipients "to payment by any other party for such health care items or services," and must "retain[]" from the recovery an amount "as is necessary to reimburse it for medical assistance payments made on behalf of an individual."

*Calvanese v. Calvanese*, 93 N.Y.2d 111, 118, 710 N.E.2d

1079, 1081, 688 N.Y.S.2d 479, *cert. denied*, 528 U.S. 928 (1999) (quoting 42 U.S.C. § 1396a(a)(25)(H) (Supp. 1998); § 1396k(b) (1994)).

In an Eighth Circuit Court of Appeals case involving a Medicaid recipient attempting to place the third party recovery into a special need trust without satisfying the existing state reimbursement lien, the court ruled that the state had a right to enforce its lien. *Norwest Bank of N.D., N.A. v. Doth*, 159 F.3d 328 (8th Cir. 1998). The court stated that recipients should not be able to avoid reimbursing the state because that would " 'eviscerate Congress's clearly expressed intention that these funds be repaid' and negate the 'Social Security Act's comprehensive scheme permitting states to place these liens.' " *Id.* at 333 (quoting *Norwest Bank of N.D., N.A. v. Doth*, 969 F. Supp. 532, 534 (D. Minn. 1997)).

An additional concern is the situation that may arise in which the lien for reimbursement exceeds the settlement amount. The Washington statutory scheme does allow for compromise providing for fairness in the recovery to injured Medicaid recipients. Discretion is given to the secretary or the secretary's designee to compromise liens. RCW 43.20B.050(1). This is similar to an issue discussed by the New York court in *Link*. The court stated that it is up to the "lien holder who is charged with monitoring and dispensing Medicaid resources to agree to compromise the lien if, in its estimation, justice, fairness and equity dictate such a decision." *Link v. Town of Smithtown*, 670 N.Y.S.2d at 696. The court went on to state that "[i]f public welfare officials across the state are not consistent and reasonable in exercising their discretion in hardship cases, based on the assumption that liens should be satisfied in full in all cases, then legislative intervention would be warranted to assure equity and fairness." *Id.* Allowing for some flexibility in compromising the lien provides some measure of fairness when the reimbursement exceeds the settlement amount.

## CONCLUSION

Congress has stated that Medicaid is to be the payment source of last resort and all other available resources must be used before Medicaid funds are made available to eligible recipients. S. REP. No. 146, 99th Cong., 1st Sess. 459 (1985), *reprinted in* 1986 U.S.C.C.A.N. 42. This program provides funds when no other funds are available. In order to continue to provide this assistance, the source must be replenished. To ensure the existence of a payment source, the federal scheme requires assignment of rights to seek reimbursement from any third party to the extent of medical assistance paid as a condition of eligibility for Medicaid. Federal law allows the assignment to be statutory. The assignment in this case was a valid statutory assignment, and because of this assignment, the state was given the right to recover the amount paid out in assistance to the Medicaid recipient. The state's lien was against the settlement before it became the property of the recipient. Since the lien was not placed on the property of the recipient, the state statute allowing this is consistent with the federal statute and thus not preempted. Federal law does not require the state to pursue the third party; that is merely one of the options available to the state. Additionally, federal law allows for recovery to the extent payment has been made. Therefore, the entire amount of the settlement is available to reimburse the state. We hold the state statute allowing the imposition of a lien on the entire settlement is consistent with the federal statute and thus not preempted. We therefore reverse the trial court's decision and strike the order entered by the court.

SMITH, MADSEN, TALMADGE, and BRIDGE, JJ., concur.

ALEXANDER, J. (dissenting) — In my view, RCW 43.20B.060(2) and RCW 74.09.180 both directly conflict with 42 U.S.C. § 1396p (1994). I reach that conclusion because these statutes purport to allow the State to impose its lien on a Medicaid recipient's *entire* recovery from a

third party. Because of this direct conflict with a federal statute, the state statutes are preempted. *Berger v. Personal Prods., Inc.*, 115 Wn.2d 267, 270, 797 P.2d 1148 (1990). I would, therefore, affirm King County Superior Court Judge J. Kathleen Learned's well-reasoned decision granting partial summary judgment to the plaintiff. Because the majority does otherwise, I dissent.

Notwithstanding my disagreement with the result the majority reaches, I find myself in agreement with some of its conclusions. For instance, I entirely agree with its discussion of the subrogation rights of the State for medical costs it has paid pursuant to federal Medicaid law. *See* RCW 74.09.180(1). I also agree with it that the assignment a Medicaid recipient is required to make to the State of any "third party payments for medical care" deprives the recipient of any proprietary interest in the portion of the recovery that represents reimbursement for medical expenses that have been paid by the State. For reasons I set forth hereafter, I part company with the majority's conclusion that the State's lien affixes to the Medicaid recipient's recovery beyond that which represents reimbursement for medical expenses.[4]

42 U.S.C. § 1396p(a)(1) (1994) provides, in pertinent part, that "[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan[.]" On the surface, this federal statute would appear to prevent a state from imposing a lien on any portion of a Medicaid recipient's third party recovery. The statute must, however, be considered in light of 42 U.S.C. § 1396a (a)(25)(H) (Supp. 1998), which requires states to promul-

---

[4] I am not persuaded by the majority's authority to the contrary. The court in *Norwest Bank N.D., N.A. v. Doth*, 159 F.3d 328 (8th Cir. 1998), for example, expressly refused to address the "question of whether the lien may be satisfied out of the entire amount of the personal injury award or settlement, or only that portion of the settlement attributable to past medical expenses." 159 F.3d at 334. Additionally, the line of New York decisions cited in the majority opinion do not persuade me. Those cases are based entirely on policy arguments and contain no discussion of legislative intent or other authority to support their interpretation of the federal statutes.

gate statutes under which "the State is considered to have acquired the rights of such individual to payment by any other party *for such health care items or services*[.]" (Emphasis added.) Account must also be taken of 42 U.S.C. § 1396k (1994), which requires states to obtain an assignment of rights to recovery of payment for medical expenses from a third party as a condition of eligibility for medical assistance. When this statutory scheme is considered in its entirety, it is apparent that a state is vested with authority to require Medicaid recipients to assign to the State their right to obtain payments from another party for health care items or services.[5] That coupled with the legislative declaration in RCW 74.09.185 that "the state is considered to have acquired the rights . . . to payment by any other party for . . . health care,"[6] leads to a conclusion that the Medicaid recipient does not acquire a proprietary interest in that portion of his or her recovery representing payment for health care items or services. It is clear, therefore, that the State is free to attach its lien to the portion of the recipient's recovery that represents recovery of sums that the State has paid for medical expenses. RCW 74.09.180 and RCW 43.20B.060(2), however, go beyond what the State is authorized to do in that they purport to allow the Department to place a lien upon "any recovery" by the recipient. This as the trial court properly observed conflicts with the federal statutory scheme.

The majority concludes that federal law does not preempt state law "because there is no conflict." Majority at 46. It reaches this conclusion after examining the same federal and state statutes that are set forth above. The majority seizes on the language in RCW 43.20B.060(2), which gives the Department a lien " 'to the extent of the value of the

---

[5] The trial court noted, that since 1992, Medicaid recipients must "assign their rights to 'third party payments for medical care.' " Clerk's Papers (CP) at 405. *See also* majority at 45 n.1 (quoting the "current public assistance benefits form").

[6] As the trial court observed "[t]his provision essentially acts as an assignment by operation of law of the recipient's rights to recover from a third party payments owed for medical care as a result of third party['s] negligence or wrong doing." Order of Summ. J., CP at 405.

assistance paid' " and concludes that it "advances the purposes and objectives of the federal law." Majority at 47 (quoting RCW 43.20B.060(2)). In my view, RCW 43.20B-.060(2) does precisely the opposite and literally flies in the face of the federal statutory scheme. In the final analysis, the majority relies on the state statute almost entirely and ignores the plain language in 42 U.S.C. § 1396a(a)(25)(H) that limits a state from acquiring any part of the recipient's recovery from a third party beyond the payment "for such health care and services." In sum, the majority fails to harmonize the state and federal statutes and does not overcome what is readily apparent—the state statutes are in direct conflict with the federal statute.

I observe, also, that the result the majority reaches is contrary to the interpretation we have placed on an analogous statute. In *Flanigan v. Dep't of Labor & Indus.*, 123 Wn.2d 418, 869 P.2d 14 (1994), we looked at RCW 51.24.060, which requires an injured worker or beneficiary to reimburse the Department of Labor and Industries when the worker or beneficiary obtains a recovery from a party at fault. In *Flanigan*, we concluded that the Department could not satisfy its lien out of damages the injured worker recovered as compensation for loss of consortium, indicating that the department could not "share in damages for which it has provided no compensation" because such a result would be "absurd and fundamentally unjust." 123 Wn.2d at 426.

The result the majority reaches here is every bit as unjust to Medicaid recipients. Under the decision, a Medicaid recipient can be unfairly deprived of amounts he or she receives as damages for pain, suffering, loss of income and the like—elements of damage that are unrelated to medical expenses that have been paid by the State. An example makes the point: Assume that a Medicaid recipient receives $10,000 in Medicaid benefits for medical expenses incurred in an accident. Assume further that the recipient later receives a damage award or settlement from a party at fault in the amount of $10,000, one half of which is to compensate the recipient for lost wages and pain and suffering. Under

the majority opinion, the Medicaid recipient would receive not a cent of the $10,000. The State, instead, would obtain the entire recovery and would, thus, share in the portion of damages for which it has not provided compensation.

The majority suggests that any unfairness inherent in this scheme can be mitigated by the State's ability to compromise its lien if, in its estimation, " 'justice, fairness and equity dictate such a decision.' " Majority at 51 (quoting *Link v. Town of Smithtown*, 175 Misc. 2d 238, 670 N.Y.S.2d 692, 696 (1997)). While the State may do that in certain cases, a Medicaid recipient has no assurance that the State would adopt a compromising position in evaluating his or her circumstances. Recipients of Medicaid should not have to rely on the mere possibility that the secretary of the Department of Social and Health Services will afford him or her a measure of equity.

I also recognize that the State has expressed concern that, in most cases where a claim against a third party is settled short of trial, it is difficult to determine what portion of the settlement represents medical payments. I agree with the trial judge that Congress has adequately addressed this concern by "requiring states to actively investigate third party recoveries and then pursue action against the third party if the benefits appear[] to exceed the cost." Order Granting Summ. J., Clerk's Papers at 407. While I can readily understand that the result the majority reaches will make it easier for the State to recoup amounts it has paid for the benefit of Medicaid recipients, the State is not without effective ways to protect the public purse that are not inconsistent with federal law.

In the final analysis, the majority decision appears to be more influenced by its concern for replenishment of the State's medical fund, than by a concern for doing equity to Medicaid recipients. Majority at 44, 49-50. While its concerns about the solvency of the fund are certainly legitimate, the fund should be replenished only from amounts that a Medicaid recipient receives as reimbursement for elements of damages for which the State has assumed

responsibility.

In sum, because the result the majority reaches here is unfair and reliant on a state lien statute that goes beyond what is permitted by federal law, I dissent.

JOHNSON, SANDERS, and IRELAND, JJ., concur with ALEXANDER, J.

Reconsideration denied December 12, 2000.